UNITED STATES DISTRICT COURT OF NEW YORK
SOUTHERN DISTRICT

Docket No. 08-7452

Vera W. Huang, Yun Chiou Cheng , Substitutes,;  )
Legal Consumer of Citizen of Massachusetts and United  )
States;  )
       )
      Plaintiffs/counterdefendant  )
   -against-  )
Nancy Van Tine, Burns & Levinson & Robin Lynch,  )
Palm Smith, and parties involved; Robert Muldoon Jr.,  )
Shrin & Logen, LLP. George Lordan,  )
   - against –  )
Dr. Meng Yih Huang, Mina Huang, Leu So Mei  )
and Wen Chin Leu of Chien – Chuen Plastic Co. Ltd,  )
Dr. Marilea K. Miller, Earnest Lin of ATI,  )
Mr. Joseph Paley, Exterminator Hazlewood,  )
   -against-  )
Judge Edward J. Rockett,  Judge Sean Duinpy, Judge  )
Spencer Kagan, Judge John Cronin, Judge John –  )
Stevens Jr. III, Judge Mary M. Manzi, Judge Digangi,  )
Judg D. Kerman, Judge Ireland, judge Cordy,  )
Assitant District Attorney John Dawley,  )
Assistant Clerk Ralph Finch, P. Guilmet, Judith Brennan,  )
Kevin Jones, Magistrate Tripe, Magistrate Doris Stenziani,  )
First Supreme Court Clerk Lillian Andruszkiewicz,  )
Clerk Holliey White, Court reporter Joseph Laro,  )
Probate Officer Slivaski, Attorney Arthur Frawley,  )
Rudolf Jaworski, Lisa green burg, Lisa Jacobowitzz,  )
 Kim Phelan, Charles Kagan, Middlesex District attorney  )
Judge Mary Anne Sahagian, Magistrate Kim White, Register  )
Pamela O'Brian, Deputy Terri Gasazzo, Probate Officer  )
Steven Sliwoski, Board of Bar Overseer Chairman Alan Rose  )
Bar Counsel Constance Vecchione, Retirement Administrator  )
William V. Clifford of Beacon Benefit Inc.  )
   -against –  )
Essex County – Secretary of the treasury- Salem Probate  )
And Family Court, Salem District Court, Salem Superior  )
Court. Town of North Andover.  )
Middlesex County – Secretary of the treasury- City of Lowell,  )
Health department agent, Inspector Robert Foley,  )
Inspector Bernard Clancy;  )
Northeast Housing Court,  )
Massachusetts Bar Association, Bar Overseers, Chair man and  )
Bar Counsel and members involved. Salem and Boston Bar  )

RECEIVED
2012 APR 22 P 11: 54
U.S. DISTRICT COURT SDNY

PRO SE OFFICE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 22 2012

FILED
U.S. DISTRICT COURT
12 APR 23 P 4:41
S.D. OF N.Y.

Massachusetts Judicial Conduct Commission- member involved.)
Chief justice M. Marshall of Massachusetts Supreme Court       )
Massachusetts Attorney General, State of Ma       )
Massachusetts political entities involved; United States;       )
Judge J. Taruo and Judge M. Wolf;       )
Boston U.S. District Attorney, Boston District Court;       )
Above all know or unknow defendants in their official and       )
Individual Capacities, A-Z insurance company and John and Jane)
 Doe defendants_____)

## APPELLANT MOTION TO DISMISS APPEAL
## UNDER 28 U.S.C. 1404 FOR
## TRANSFER OF WANTED JURISDICTION
## FOR RECALCITRANT WITNESS WITH
## REQUEST US ATTORNEY GENERAL  SUBSTITUTE
## AS CORDINATOR FOR GLOBAL  US AGENCIES'S REVIEW
## FOR ADMINISTRATIVE WRIT OF MANDATE FOR DAMAGES

26. TradeComet.com LLC v. Google Inc. No. 10-911, ( 2nd. Cir. 2011); In a private

action alleging violations of the Sherman Act by the defendant, 15 U.S.C. sections

1 and 2, and arising from plaintiff's use of defendant's AdWords search platform,

Rule 12(b) dismissal of the complaint is affirmed where a defendant may seek

enforcement of a forum selection clause through a Rule 12(b) motion when the

clause specifies that claims must be brought in a forum other than the one in

which they have been brought, yet permits those claims to be brought in a

different federal forum. a district court may only enforce a forum selection clause

permitting an alternative federal venue pursuant to 28 U.S.C. § 1404, which

authorizes transfer of the case to the agreed-upon venue, rather than through Rule

12(b). The court then applied our four-part test for determining whether to dismiss

a claim based on a forum selection clause, see Phillips v. Audio Active Ltd., 494

F.3d 378, 383–84 (2d Cir.2007), and granted Google's motion to dismiss for

transfer.

2. <u>DeCarlo v. Bonus Stores Inc. No. 06-60977, ( 5th Cir. 2007)</u>; The circuit court certifies questions to the Mississippi Supreme Court regarding: 1) whether Mississippi <u>law permits a retaliatory discharge claim for discharge in retaliation</u> <u>for reporting a co-employee's illegal acts that relate to the employer's business;</u> and 2) if so, whether Mississippi law allows for individual liability for the tort of retaliatory discharge even if the individual defendant's participation in the discharge was in the course and scope of his employment.

3. <u>28 U.S.C. 332(d)(1)</u>; <u>authority for mandatory financial conflict screening policy</u> <u>adopted by Judicial Conference of United States</u> on September 19 2006. Court Obligations: each court's clerk's office must: 1. ensure that the following information is entered into the database used for automated screening , including the parties, attorneys , law firms and corporate parents disclosed by the parties; 2. At the request of a judge, enter the judge's conflicts list into the database used for automated conflicts screening; 3. Take reasonable steps to ensure that attorneys ( or parties who are not represented by counsel ) provide information needed for automated conflict screening , including corporate parent statements as required by Fed. R. App. P. 26.1, Fed. R. Bankr. P. 1007(a)(1) and 7007.1 Fed. R. Civ. 7.1 and Fed. R. Crim. P.12.4.   Petition for four – member panel of the Judicial Council review for Chief Judge's dismissal. <u>Question</u> of Whether   Judicial Council are also members of Ma Bar Association member as association and partner with CNA Insurance Company – parties responsible for plaintiff's  join claims. Whether limited jurisdiction exists for property rights from taking claims and Ma citizens' right of protection claims.

4. <u>Massachusetts Care Self Insurance Group Inc. v. Massachusetts Insurance Insolverncy Fund. No. 10652, ( MA Supreme Ct. 2010);</u> This case requires us to determine whether a claim filed with the Massachusetts Insurers Insolvency Fund (Fund) by a workers' compensation self-insurance group is a **"[c]overed claim"** within the meaning of G.L. c. 175D, § 1(2). Massachusetts Care Self-Insurance Group, Inc. (Mass Care), a workers' compensation self-insurance group established under G.L. c. 152, §§ 25E-25U, sought recovery from the Fund in respect of certain excess and reinsurance policies issued by Mass Care's insolvent insurer, <u>Reliance National Indemnity Company (Reliance);</u>

5. The Fund is a "**statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer**." <u>Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 596-597 n. 4, 925 N.E.2d 9 (2010), quoting Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 776, 592 N.E.2d 1317 (1992).</u> The Fund is obligated to pay covered claims against an insolvent insurer (up to $300,000 per claim) in place of that insurer. G.L. c. 175D, § 5(1) (a ) & (b ). See <u>Ulwick v. Massachusetts Insurers Insolvency Fund, 418 Mass. 486, 489, 637 N.E.2d 209 (1994).</u> Mass Care can be entitled to payment from the Fund only if its claim is a covered claim within the meaning of the statute. <u>G.L. c. 175D, § 5(1) (d )</u> (Fund shall "adjust, compromise, settle and pay all covered claims . and shall deny all other claims"). The underlying purpose of both statutory sections is clearly to establish workers'

compensation self-insurance groups that act much like traditional workers' compensation insurers but are exempt from the corporate regulations applicable to traditional insurance companies. G.L. c. 152, §§ 1(7) and 25E. The obvious legislative purpose in establishing the Fund . is to benefit members of the public, individuals and entities . which are outside the insurance industry, from losses due to the insolvency of a member of that industry." Id. at 490-491, 637 N.E.2d 209.

6. If Mass Care is a member of the insurance industry it would, accordingly, be inconsistent with legislative purposes to permit it to file a covered claim. Id.... Maryland Motor Truck, supra at 102-103, 871 A.2d 590. We agree. In addition, the risk identified by the Iowa court, that insolvency will result in members being liable for the group's losses, differs from traditional insurer insolvencies (absent Fund protection) only in that losses are spread amongst the members rather than falling directly on the policyholder suffering each loss. See G.L. c. 152, § 25R ("In the event of a liquidation . the commissioner of insurance shall levy an assessment on its members . to discharge all liabilities of the group ."). Ulwick v. Massachusetts Insurers Insolvency Fund, 418 Mass. 486, 490-491, 637 N.E.2d 209 (1994). See also id. at 492, 637 N.E.2d 209 (Wilkins, J., dissenting) ("The Fund [and the public] should be a last resort source of protection, as the Legislature intended"). Over a reasonable period of time, the cost of Fund assessments is then passed through to policyholders of the assessed insurers in the form of increased premiums. G.L. c. 175D, § 13; Over a reasonable period of

time, the cost of Fund assessments is then passed through to policyholders of the assessed insurers in the form of increased premiums. G.L. c. 175D, § 13.

7. National Association of Insurance Commissioners (NAIC). Chapter 175D was patterned on the Post-Assessment Insurance Guaranty Association Model Bill (model act) adopted by the NAIC. Clark Equip. Co. v. Massachusetts Insurers Insolvency Fund, 423 Mass. 165, 167 n. 2, 666 N.E.2d 1304 (1996). following amendments in 2008, the model act now states that a " 'covered claim' shall not include . (c) Any amount due any reinsurer, insurer, insurance pool or underwriting association, health maintenance organization, hospital plan corporation, professional health service corporation or self-insurer ." (emphasis added). 1 Proceeding of the NAIC at 493 (2008), cited in III NAIC Model Laws, Regulations and Guidelines 540-5 (2009). The term "[s]elf-insurer" is then defined to mean "a person that covers its liability through . a group self-insurance program."6 1 Proceeding of the NAIC at 495, cited in III NAIC Model Laws, Regulations and Guidelines, supra at 540-7. The NAIC's present policy guidance therefore supports our conclusion that Mass Care should not be classified as an insurer but that it should be precluded from filing a covered claim.

8. Hunnihan v. Mattatuck Manufacturing Company, No. 15751, ( CT Supreme Ct. 1997); Peter Kelly, a member of the state insurance department stated: "[T]his bill provides the means to avoid financial loss to Connecticut residents because of the insolvency of [insurance companies]. In the late 1960s . [c]onsumers were being hurt and on a personal scale, an insolvency can be ruinous. I think you must remember that industry is not paying the cost. This bill provides that

Connecticut residents will pay the cost.   This bill provides for protections of residents of this state and the residents if any assessments are ever made will pay for the cost of such assessments in their future insurance premiums." <u>Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1971 Sess., pp. 55-59.</u> In other words, the <u>Guaranty Act</u> does not provide a solvent substitute for an insolvent insurer, but, ***<u>rather, is a limited form of protection for the public.</u>" <u>Id.;   see also Ursin v. Ins. Guaranty Assn., 412 So.2d 1285, 1289 (La.1981); Ferrari v. Toto, 383 Mass. 36, 37-38, 417 N.E.2d 427 (1981).</u>.

9.  The NYLB has performed this function since 1909, when the New York State Legislature passed the law mandating that the Superintendent assume the separate responsibility of Receiver. In the case of each insurance company in receivership, the Superintendent as Receiver is appointed by the <u>New York State Supreme Court</u>. The Court approves all of the actions of the Superintendent, and by extension those of the NYLB.

10. According to the <u>National Conference of Insurance Guaranty Funds</u> (NCIGF, http://www.ncigf.org ) state guaranty funds assessed insurers $219.3 million in 2010 to pay for insolvencies, the last year for which complete data are available, see <u>Net Assessment chart below</u>. Assessments on insurance premiums may fund earlier insolvency expenditures as well as current year costs. If the commissioner does not believe the problems can be corrected and that continuing to operate the company would be harmful to its policyholders and creditors, he can seek an Order of Liquidation from a state court. <u>Under an Order of Liquidation, the commissioner is appointed</u> liquidator. The liquidator then appoints a receiver to

manage the liquidation process. If you are aware of any potentially fraudulent insurance activity or official misconduct by a Liquidation Bureau employee <u>or vendor</u>, you can make a report in strict confidence via the following methods:

11. <u>Massachusetts Tort Claims Actl (MTCA), Massachusetts was one of five</u> jurisdictions retaining a strict doctrine of government immunity. <u>Massachusetts Tort Claims Actl (MTCA), Massachusetts was one of five</u> jurisdictions retaining a strict doctrine of government immunity. The language of the <u>Consumer Protection Act subject to federal interpretation is identical to that in the Federal Trade Commission Act</u>. The MTCA and the FTCA, however, do not share the same language, <u>Packaging Industries Group v. Cheney,</u> when state statutory language "closely tracks" that of a federal statute, the court will follow federal interpretive precedent. <u>Towing v. United States</u>165 <u>350 U.S. 61 (1955), and Rayonier, Inc. v. United States.</u> 166 <u>352 U.S. 315 (1957)</u> The Indian Towing Court held the <u>federal government liable for damages resulting from a negligently maintained lighthouse. Nelms'</u> dissent cited legislative history from the <u>1946 bill that was passed and enacted into the FTCA.</u>Joint committee discussion indicates that the <u>bill was designed to establish a uniform system permitting actions to be initiated on " 'any tort claim . . . with the exception of certain classes of torts expressly exempted from the operation of the act</u>. It is applicable when the social utility of an activity is outweighed by the risk of harm. <u>Under American tort law in general, whether a jurisdiction takes an expansive approach to government liability,</u> as New York does, or a restrictive approach, as California does, strict liability is a suitable cause of action <u>when the government engages in abnormally dangerous</u>

activity. Implied authority, however, may be drawn from two phrases in the language of section 2 of the MTCA. The phrase "wrongful acts or omissions" may be construed to include strict liability. The phrase "liable ... as a private individual" has been proposed as the test for federal tort liability and is the test for government liability in several jurisdictions that allow strict liability actions against the government. The Supreme Court applies a two-part test to determine whether the government is protected by the discretionary function exception. First, the employee's alleged act must involve an element of judgment or choice. Second, the conduct must be based on considerations of public policy. United States v. Gaubert, 499 U.S. 315, 113 L.Ed.2d 335, 111 S. Ct. 1267 (1991). Section 2680(h) – the exception for intentional torts and false statements. However, the statute includes an important exception: it does not bar claims based on the actions of federal "investigative or law enforcement officers" for assault, battery, false imprisonment, false arrest, malicious prosecution, or abuse of process. For example, a person decides to buy a house in reliance on a government employee's certification that the house complies with federal construction standards. Under section 2680(h), the buyer cannot sue the government merely because the certification is false. However, 88if he can establish that the certification was the result of a negligent inspection conducted by a government employee, then he may have a claim. In some circumstances, a plaintiff may pursue parallel claims under section 2679(b)(2) of the FTCA, Bivens actions are tried before a jury, and the successful plaintiff may recover punitive damages and attorney's fees, but the individual defendant is likely to be

<u>insolvent</u>. Justice Department's decision if they are dissatisfied with it, and the district court will review the determination in an evidentiary hearing. <u>Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 132 L.Ed.2d 375, 115 S. Ct. 2227 (1995)</u>.

12. <u>In Re: Mark Corrinet, No. 10-35568, ( 9th Cir. 2011)</u>; In a dispute arising from the revocation of appellant's district court bar license for not being a member of the state bar in which the district court sits, judgment of the court is reversed where the court abused its discretion by: 1) <u>failing to issue a proper order to show cause;</u> 2) failing to adhere to the rules regarding the discipline of attorneys; 3) <u>failing to provide appellant with an adequate opportunity to present his case;</u> and 4) <u>failing to give appellant an adequate opportunity to comply with an order to gain membership in the State Bar</u>. <u>See Spevack v. Klein, 385 U.S. 511, 516 (1967)</u> (stating that "[t]he threat of disbarment and the loss of professional standing, professional reputation, and of livelihood are powerful forms of compulsion"). <u>Gallo v. U.S. Dist. Court, 349 F.3d 1169, 1176 (9th Cir.2003)</u>, <u>but do have jurisdiction to review disbarments</u>, see <u>In re North, 383 F.3d 871, 874 (9th Cir.2004)</u>, the majority claims that this determination of <u>ineligibility is really a "disbarment."</u>

13. <u>*** Cynosure, Inc. v. St. Paul Fire & Marine Inc. Co. No. 10-1119, ( 1st. Cir. 2011);</u> In a declaratory judgment action concerning coverage under a commercial policy insuring against liability for injury caused by advertising, specifically sending commercial fax messages without consent, judgment of the district court compelling coverage in a <u>Telephone Consumer Protection Act dispute, 47 U.S.C. section 227(b)(1)(C)</u>, is reversed where the relevant coverage provision applies

only if plaintiff makes known to others covered material that violates some other person's right of privacy. <u>Supreme Judicial Court of Massachusetts</u> in <u>Terra Nova Ins. Co. v. Fray–Witzer, 449 Mass. 406, 869 N.E.2d 565 (2007)</u>.2 The policy construed in <u>Terra Nova</u> <u>covered advertising liability</u> for "publication of material that violates a person's right of privacy." Id. at 569. The Court applied the common rule that ordinary, plain meaning governs the analysis of insurance contract terms, along with the corollary that ambiguity in the language as it would be understood by an ordinary insured is construed in favor of coverage. Id. at 571–72. Because it found **"the term 'right of privacy'** to be ambiguous [as to the alternatives of intrusion and disclosure] in the insurers' policies," id. at 573, it held that liability for violating the Act was covered. Several courts have interpreted identical or similar policy language <u>to mean that unsolicited facsimile advertisements constitute advertising injury.</u>" The remaining case involved a policy covering "<u>invasions of rights of privacy</u>" <u>with no further definition of the term</u>. See <u>Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 879 n. 2, 882–83 (8th Cir.2005)</u>. <u>Terra Nova, 869 N.E.2d at 573 n. 11</u> ("<u>Black's Law Dictionary 1350 (8th ed.2004)</u> defines 'right of privacy' as '[t]he right to personal autonomy,'(independence, freedom) or 'the right of a person and the person's property to be free from unwarranted public scrutiny or exposure.' ").

14. \*\*\* <u>Massachusetts General Law Part 1.Administration of the Government, Title XXII Corporations, Chapter 175 Insurance: Section 21:</u> No company other than a life company <u>shall insure in a single risk an amount larger than ten percent of its surplus to policyholders</u>, unless it has reinsured, as provided in section twenty, the

excess over said limit to take effect simultaneously with the original contract. A company violating this section shall be punished by a fine of five thousand dollars for each day during which such violation continues.

15. System Fuels, Inc. v. US, No. 2010-5116, ( Fed. Cir. 2012); In a case in which the United States Court of Federal Claims determined that the United States breached a contract for the removal of spent nuclear fuel, the damages award is affirmed in part and reversed in part, where: 1) the trial court properly denied the cost of borrowed funds to construct the plaintiffs' dry fuel storage facility, as interest and interest costs incurred on money borrowed as a result of the government's breach or delay in payment are not recoverable; 2) the trial court erred in granting an offset of damages for certain overhead costs; and 3) the trial court did not err in its causation analysis and determination of the amount of nominal damages.

16.  SECTION 24D: LUMP SUM INSURANCE PAYMENTS; EXCHANGE OF CLAIMANT INFORMATION BETWEEN IV-D AGENCY AND INSURANCE COMPANIES; WITHOLDING OF PASTDUE CHILD SUPPORT SUBJECT TO LIEN; Section 24D. (a) Prior to making any nonrecurring payment equal to or in excess of $500 to a claimant under a contract of insurance, every company authorized to issue policies of insurance pursuant to this chapter shall exchange information with the IV-D agency, as set forth in chapter 119A, to ascertain whether such claimant owes past due child support to the commonwealth or to an individual to whom the IV-D agency is providing services, and is subject to a child support lien pursuant to section 6 of said chapter 119A. To determine whether a claimant owes past due child support, the company shall either provide

the IV-D agency with information about the claimant or examine information made available by the IV-D agency and updated not more than once a month. If the company elects to provide the IV-D agency with information about a claimant, the company shall provide to the IV-D agency, not less than ten business days prior to making payment to such claimant, the claimant's name, address, date of birth and social security number as appearing in the company's files and such other information appearing in the company's files as the commissioner of revenue may require by regulation in consultation with the commissioner of insurance...... (b) This section shall not apply to that portion of a claim resulting in payments on behalf of the claimant issued to a third party where there is documentation showing that the third party has provided or agreed to provide the claimant with a benefit or service related to the claim including, but not limited to, *** the services of an attorney or a medical doctor, or to any portion of a claim based on damage to or a loss of real property. The commissioner of revenue, in consultation with the commissioner of insurance, shall promulgate regulations setting forth procedures for making payment to the IV-D agency when a third party has either provided or agreed to provide goods or services to the claimant, and the insurance company cannot reasonably determine the remaining amount payable to the claimant. (c) The provisions of the Employee Retirement Income Security Act limiting, for contracts of insurance, the amounts which may be assigned or attached in order to satisfy child support obligations shall apply to the provisions of this section. (d) Pursuant to regulations issued by the commissioner of revenue in consultation with the commissioner of

insurance, a company that knowingly fails to accurately exchange information regarding a claim to which this section applies shall be subject to a penalty assessed by the IV-D agency. A company that fails or refuses to surrender property subject to a child support lien to the IV-D agency shall be liable as provided in paragraph (7) of subsection (b) of section 6 of said chapter 119A. A company that makes a payment to the IV-D agency pursuant to this section and **** an insured individual on whose behalf the company makes a payment shall be immune from any obligation or liability to the claimant or other interested party arising from the payment, notwithstanding the provisions of this chapter or any other law.

17. <u>MGL. Part I ; Administration of the Government: Title XVII; Public Welfare; Chapter 119A Child Suppport Enforcement;   Section 6; Arrearages; Collection Procedures;   Section 6. (a) The IV-D agency, in accordance with Title IV, Part D of the</u> Social Security Act, is hereby authorized to institute collection procedures for all arrearages which have accrued against child support payments owed pursuant to a court judgment or support order, or an order from a IV-D agency of competent jurisdiction. These collection procedures shall include, but not be limited to, notification of employers that an order to withhold income is in effect and not suspended; notification of obligors; demand letters; use of state and federal tax refund intercept programs; use of federal administrative offset pursuant to <u>the Debt Collection Improvement Act of 1996 31 USC 3716</u>; use of federal program for denial, revocation, or limitation of passports; notification to consumer credit reporting agencies pursuant to section 52A of chapter 93;

initiation of contempt proceedings; use of lien, levy and seizure as provided in subsection (b); use of the services of any person providing collection services to the commissioner of revenue; seeking capias in appropriate situations; seeking a warrant pursuant to section 34A of chapter 215 in appropriate situations; attachment of or lien against property, trustee process in accordance with chapter two hundred and forty-six; civil actions to reach and apply; petition to the probate and family court for distribution of trust income in accordance with chapter 203;

18. Gre Ins. Group/Tower Ins. Co. Inc. v. Complete Music Inc. No. 00-3982, ( 8th Cir. 20010; Under Nebraska law, there is insufficient causation in advertising injury clause in insurance policy to cover copyright infringement claim where insured used advertising to attract franchisees and franchisees committed infringement by using insured's products. Network Automation, Inc. v. Advance Systems Concepts, Inc. No. 10-55840, ( 9th Cir. 2011); In a trademark infringement dispute involving whether the use of a trademarked name by defendant to advertise its products through search engine searches is a violation of the Lanham Act, 15 U.S.C. section 1114, injunctive relief by district court. the three most important factors in "cases involving the Internet" are (1) the similarity of the marks;   (2) the relatedness of the goods;   and (3) the marketing channel used.   The court therefore issued a preliminary injunction against Network's use of the mark ActiveBatch.

19. Cash v. County of Erie, No. 09-4371, ( 2nd. Cir. 2011); In a Section 1983 disputing alleging a due process violation and arising from a sexual assault on plaintiff by a male sheriff deputy while she was in pretrial detention, judgment

notwithstanding the verdict by the district court in favor of defendant is reversed where the plaintiff presented sufficient evidence of municipal liability to support a jury verdict in her favor.

20. Free Speech Coalition , Inc. v. Attorney General , No. 10-4085, ( 3rd. Cir. 2012); In a suit challenging the constitutionality of federal criminal laws imposing recordkeeping, labeling, and inspection requirements on producers of sexually explicit depictions, the district court's order is: 1) vacated to the extent that it a) dismissed in their entirety the plaintiffs' claims brought pursuant to the First Amendment and the Fourth Amendment, b) dismissed the plaintiffs' claim for injunctive relief to the extent that it asserted a right to injunctive relief for violations of the First Amendment or the Fourth Amendment, and c)denied the plaintiffs leave to amend their Fourth Amendment claim; and 2) affirmed in all other respects.

21. Free Enterprise Fund v. Pub. Co. Acctg. Oversignt Bd. No. 08-861, ( US Supreme Ct. 2010); In an action against the Public Company Accounting Oversight Board and its members, seeking, inter alia, a declaratory judgment that the Board was unconstitutional and an injunction preventing the Board from exercising its powers, the D.C. Circuit's affirmance of summary judgment for defendants is affirmed in part where the Board's appointment was consistent with the Appointments Clause. However, the judgment is reversed in part where 1) the dual for-cause limitations on the removal of Board members contravene the Constitution's separation of powers; and 2) the unconstitutional tenure provisions were severable from the remainder of the statute

22. In Milton v. Morris (9th Cir. 1985) 767 F.2d 1443 ; The question thus becomes whether Milton's due process rights were violated when he was tried without having had any meaningful opportunity to prepare his defense. We hold, in the circumstances of this case, that they were. Faretta v. California (1975) 422 U.S. 806, 819 (Faretta).); holds that the rights guaranteed by the sixth amendment are personal to the accused.  The rights to notice, confrontation, and compulsory process' mean, at a minimum, that time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation. For this reason, some true —pagingǁ systems have been condemned as violating the federal constitution. (Toussaint, supra, 801 F.2d at pp. 1109–1110.); People v. Blair, supra, 36 Cal.4th at p. 733.)Thus, the crucial question . . . is whether [a defendant] had reasonable access to the ancillary services that were reasonably necessary for his defense. Taylor v. List (9th Cir. 1989) 880 F.2d 1040, 1047 (Taylor) describing Milton as holding that the Sixth Amendment right to self-representation recognized in Faretta includes a right of access to law books, witnesses, and other tools necessary to prepare a defense'),Degrate v. Godwin (5th Cir. 1996) 84 F.3d 768, 769; U.S. v. Smith (6th Cir. 1990) 907 F.2d 42, 44; U.S. v. Pina (1st Cir. 1988) 844 F.2d 1, 5, fn. 1; U.S. ex rel. George v. Lane (7th Cir. 1983) 718 F.2d 226, 231 the offer of court-appointed counsel to represent a defendant satisfies the constitutional obligation of a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments']; see also U.S. v. Robinson (9th Cir. 1990) 913 F.2d 712, 717.

23. <u>US v. Snipe, No. 06-30215, ( 9th Cir. 2008)</u>; For purposes of the exigent circumstances analysis, a <u>two-pronged test is adopted that asks</u> whether: 1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that <u>there was an immediate need to protect others or themselves from serious harm</u>; and 2) the search's scope and manner were reasonable to meet the need. <u>United States v. Najar, 451 F.3d 710, 715, 718 (10th Cir.2006)</u> (noting that Brigham City did not "require probable cause in this type of exigent circumstance[Consequently, the Tenth Circuit <u>adopted a new two-part test that asks, like the test we adopt here,</u> "whether (1) <u>the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others</u>, and (2) the <u>manner and scope of the search is reasonable</u>." Id. at 718. <u>The Fourth Amendment provides that</u>, "<u>The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.</u>" <u>U.S. Const. amend. IV.</u>

24. <u>In re X.s. No. B221851, ( Cal. App. 2010)</u>; Juvenile court's judgment declaring a father's minor son a dependent child of the court based in part on a finding against the father under <u>Welfare and Institutions Code section 300(b)</u> and ordering the child place with his maternal grandmother is reversed and remanded as, to establish dependency jurisdiction under section 300(b), DCFS must establish by a preponderance of the evidence proof of past harm or substantial risk of future

harm to the child, and here, the juvenile court's conclusion that dependency jurisdiction exists based on the allegation against the father under section 300(b) is not supported by substantial evidence.

25. THEREFORE: Appellant Motion to Dismiss Appeal Under 28 U.S.C. 1404 for Transfer of Wanted Jurisdiction of Federal Claims Court and International Court for recalcitrant witness with request US Attorney General   Substitute as Coordinator for Global US Agencies Review for administrative mandate for damages.

By Vera W. Huang
52-38 A 72 St
Maspeth New York 11378

<u>AFFIDAVIT OF SERVICE:</u>

I , <u>Vera W. Huang Will  Mail a copy of above motion to</u>

1. US Attorney Sheive Normand,  US Attorney's Office  Southern District of New

York 3rd. Fl.  86 Chambers St.  New York, NY 10007. 4/13/12

1. I will serve a copy to Chief Justice of Second Circuit Dennis Jacobs with a

   petition letter, ,40 Foley Square New York New York 10007.

2. I will serve a similar petitioner letter to Chief Justice of First Circuit Sandra L.

   Lynch,  1 Courthouse Way, Boston Massachusetts 02210,

3. David Ausiello, US Department of Justice , Executive Office for
   United States Attorneys, Assistant Director, Communications and
   Law Enforcement Coordination Staff, Bicentennial Building , Room
   7500 600 E St. N.W. Washington DC 20530; Tel 202-252-5490, Fax :
   202-252-5489. David.Ausiello@usdoj.gov, 4/22/12.

4. Same motion to NY District Court.

<u>Signed: Vera W. Huang</u>

Dated: 4/22/12